**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| BRIAN BIGSBY, | ) | CASE NO. 4:14-cv-02335 |
| | ) | |
| Petitioner, | ) | JUDGE DAN AARON POLSTER |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHELE MILLER, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Brian Bigsby ("Bigsby"), challenges the constitutionality of his conviction in the case of *State v. Bigsby*, Mahoning County Court of Common Pleas Case No. 2010-CR-805. Bigsby, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on October 20, 2014. On December 10, 2014, Warden Michele Miller ("Respondent") filed her Answer/Return of Writ. (ECF No. 4.) Bigsby filed a Traverse on December 29, 2014. (ECF No. 6.) For reasons set forth in detail below, it is recommended that Bigsby's petition be DENIED.

**I. Summary of Facts**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012); *Montgomery v.*

*Bobby*, 654 F.3d 668, 701 (6th Cir. 2011). The state appellate court summarized the facts underlying Bigsby's conviction as follows:

> [*P2] In the early morning hours of April 27, 2007, Erica Stewart was asleep in her Youngstown home when she heard knocking at her door, followed by knocking on her window. At her window, Stewart asked who was there. Appellant replied. Also asleep in Stewart's house at the time were her boyfriend, Vincent Franklin, and her two daughters Breyona, who was eleven years old, and Brianne, who was a year old. Appellant is Brianne's father.
>
> [*P3] According to Stewart, she opened the door slightly and asked appellant what he wanted. She did not invite him inside because her boyfriend was there. When she told appellant this, he pushed the door open and punched her in the face. Appellant then went into Stewart's bedroom and confronted Franklin. Stewart went into the bedroom too and appellant hit her again. Appellant continued to punch and kick Stewart and at some point hit her in the knee with a baseball bat, which she kept in the house. Stewart eventually passed out. She awoke when the police arrived. By that time appellant was gone.
>
> [*P4] According to appellant, he went to Stewart's house after having been out with some friends. He knocked on the door and Breyona let him in. He then walked into Stewart's bedroom and saw Franklin holding his daughter. Appellant told Franklin to put his daughter down, which he did, and then the two began to exchange words. Stewart hit appellant in the back and he reacted by turning around and punching her two or three times in the face. After realizing what he had done, appellant apologized to Stewart and left her house.
>
> [*P5] Appellant fled Ohio approximately a week after the incident and was apprehended in California in July 2010.
>
> [*P6] Stewart's injuries required one surgery to repair her torn eyelids and two other surgeries to repair her broken kneecap.

*State v. Bigsby*, 2013 Ohio App. LEXIS 5901, 2013-Ohio-5641 at ¶¶1-6 (Ohio Ct. App., Dec. 12, 2013).

## II. Procedural History

A. **Conviction**

On August 28, 2010, a Mahoning County Grand Jury charged Bigsby with two counts of

felonious assault in violation of Ohio Revised Code ("O.R.C.") § 2903.11(A)(1)(D) & (A)(2)(D), two counts of aggravated burglary in violation of O.R.C. § 2911.11(A)(1)(B) & (A)(2)(B), and one count of domestic violence in violation of O.R.C. § 2919.25(A). (ECF No. 4-1, Exh. 1.) After a jury trial, Bigsby was found guilty as charged. (ECF No. 4-1, Exh. 3.) On April 5, 2012, Bigsby was sentenced to an aggregate prison term of ten years. *Id*.

**B.  Direct Appeal**

On April 12, 2012, Bigsby, through new counsel, filed a Notice of Appeal with the Court of Appeals for the Seventh Appellate District ("state appellate court") raising the following assignments of error:

1. The trial court erred in finding Appellant Bigsby guilty of felonious assault as that finding is not supported by the manifest weight of the evidence.

2. The trial court erred in finding Appellant Bigsby guilty of aggravated assault [sic] as that finding is not supported by the manifest weight of the evidence.

3. The trial court erred in finding that the evidence demonstrated by the State was sufficient to support convictions for felonious assault and aggravated burglary.

4. The trial court erred in failing to allow Appellant Bigsby to cross examine the victim on her drug use and psychological conditions.

5. The trial court erred in overruling Appellant Bigsby's motion for a mistrial when a witness referenced Appellant Bigsby's prior bad acts.

(ECF No. 4-1, Exh. 5.)

On December 12, 2013, Bigsby's conviction was affirmed. (ECF No. 4-1, Exh. 7.)

On December 30, 2013, Bigsby, *pro se*, filed a Notice of Appeal with the Supreme Court of Ohio raising as propositions of law the same five assignments of error argued below. (ECF No. 4-1, Exh. 9.) On March 26, 2014, the Court declined to accept jurisdiction of the appeal

pursuant to S. Ct. Prac. R. 7.08(B)(4).

**C.     Application to Reopen Appeal**

On January 22, 2014, Bigsby, *pro se*, filed an application to reopen his appeal pursuant to Ohio App. R. 26(B) asserting that appellate counsel was ineffective for failing to raise the ineffectiveness of trial counsel, for failing to argue that a jury instruction should have been given on the lesser offenses of aggravated burglary, and for failing to argue that a witness was not credible.  (ECF. No. 4-1, Exh. 12.)  On February 14, 2014, the state appellate court denied the application.  (ECF No. 4-1, Exh. 14.)  Bigsby did not appeal the denial to the Supreme Court of Ohio.

**D.     Other State Court Filings**

On May 7, 2014, Bigsby, *pro se*, filed an application for DNA testing of the baseball bat used against the victim, which was denied as untimely filed.  (ECF No. 4-1, Exhs. 15 & 16.)

On May 13, 2014, Bigsby, *pro se*, filed a post-conviction petition pursuant to O.R.C. § 2953.21, which was also denied as untimely.  (ECF No. 4-1, Exhs. 17 & 18.)

On June 6, 2014, Bigsby, *pro se*, filed a "Motion to request Court to Modify or Vacate Conviction."  (ECF No. 4-1, Exh. 19.)  Thereafter, on July 18, 2014, he also filed a document enitled "Sentence Contrary to Law."  (ECF No. 4-1, Exh. 20.)  On August 8, 2014, the court dismissed the petitions as untimely and further noted they were barred by *res judicata*.  (ECF No. 4-1, Exh. 23.)

On September 29, 2014, Bigsby filed yet another request seeking DNA testing of the baseball bat, which was again denied as untimely.  (ECF No. 4-1, Exhs. 24 & 25.)

E.  **Federal Habeas Petition**

On October 20, 2014, Bigsby, *pro se*, filed a Petition for Writ of Habeas Corpus and asserted the following grounds for relief:

**GROUND ONE**:[1]

**Supporting Facts**:

**GROUND TWO**: Evidence of the allegations is non supportive by the presentation of the witness and victim to the Office of the Prosecution allegations. No arresting or Officers on the crime scene were able to verify the use of other than a seeking of, "warrant of restraint," from and keeping of distance of the victim.  The testimony of the Experts of the scene, "no evidence of the use of the bat as a weapon."

**Supporting Facts**: Evidence presented was hearsay as prosecution used no physical evidence with, "any confirmation, the evidence was not valid, no officer requested warrants during a restraint request by victim, "by the expert witness to confirm other than the allegation of Domestic Violence.

**GROUND THREE**:

**Supporting Facts**: D.N.A. Is proof to the release of the Appellant for all allegations other than Domestic Violence and is supported by the evidence of the officers at the scene of the allegation of Domestic Violence.  No other allegation was presented by the Officers at the scene.

**GROUND FOUR**:

**Supporting Facts**: Notice of allegations by Prosecutor had no proof and were non existent to the jury.  The jury had a blank format for Domestic Violence only.  No other allegations were in the format and the allegation by Officers Incident Report formed the format for the Indictment to and After the Grand Jury. All other Allegations are those of the imagination of the Prosecutor and entered by the Office of the Prosecutor illegally.

(ECF No. 1.)

---

[1] Bigsby's petition contains material omissions and is exceedingly difficult to comprehend.  Ground One is blank and contains no supporting facts. (ECF No. 1 at 4.) Also, Grounds Three and Four are left blank but do contain supporting facts. *Id*. at 7, 9.

### III. Review on the Merits[2]

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. , 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)) The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6;

---

[2] Respondent concedes that Bigsby's grounds for relief, to the extent they seek to challenge to the sufficiency of the evidence supporting his convictions, are exhausted and have been fairly presented. (ECF No. 4 at 7.)

*Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id.* at 410-12. "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, U.S. , 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA. *Id*. at 786 (internal quotation marks omitted). The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785. The Court noted that Section 2254(d) "reflects the view that habeas

-7-

corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id*. (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 786  87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A. Ground One: Sufficiency Claim**[3]

While Bigsby's petition purports to raise three grounds for relief, all three appear to revolve around a claim that his convictions, other than for domestic violence, are not supported by substantial evidence.[4]  As such, the Court construes the petition as raising only one ground for relief  a challenge to the sufficiency of the evidence supporting his felonious assault and aggravated burglary convictions.

---

[3] Before the state courts, Bigsby also argued that his convictions were against the manifest weight of the evidence.  This Court construes the petition as rising only a sufficiency claim, as a claim that a conviction is against the manifest weight of the evidence is not cognizable upon federal habeas review. *See Nash v. Eberlin*, 258 Fed. App'x. 761, 765, n. 4 (6th Cir. 2007); *Hess v. Eberlin*, 2006 U.S. Dist. LEXIS 99990, 2006 WL 2090093 (S.D. Ohio 2006) (*citing Walker v. Engle*, 703 F.2d 959, 969 (6th Cir. 1983)).  Unlike "manifest weight claims," "insufficient evidence" claims are cognizable in habeas under the Fourteenth Amendment's Due Process Clause. *In re Winship*, 397 U.S. 358, 363-64, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970).  It does bear noting that, "the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence." *Nash*, 258 Fed. App'x at 765.

[4] Bigsby did not challenge the sufficiency of his domestic violence conviction before the state appellate court nor does he challenge it here.  His traverse does not add any clarity to his petition.  (ECF No. 6.)

The Due Process Clause of the Fourteenth Amendment requires that a criminal conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*; *Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 1993 U.S. App. LEXIS 29301, 1993 WL 460782 at * 3 (6th Cir. 1993) citing *Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296, 112 S. Ct. 2482, 120 L. Ed. 2d 225 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Consistent with these principles, the Supreme Court recently emphasized that habeas courts must review sufficiency of the evidence claims with "double deference:"

> We have made clear that *Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference.  First, on direct appeal, 'it is the responsibility of the jury — not the court — to decide what conclusions should be drawn from evidence admitted at trial.  A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury.' *Cavazos v. Smith*, 565 U.S. 1, ___, 132 S. Ct. 2, 181 L. Ed. 2d 311, 313 (2011) (*per curiam*).  And second, on habeas review, 'a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees

-9-

with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'" *Ibid*. (quoting *Renico v. Lett*, 559 U.S. 766 , 772, 130 S. Ct. 1855, 1862, 176 L. Ed. 2d 678 (2010)).

*Coleman v. Johnson*, 132 S.Ct. 2060, 2062, 182 L. Ed. 2d 978 (2012). Under this standard, "we cannot rely simply upon our own personal conceptions of what evidentiary showings would be sufficient to convince us of the petitioner's guilt," nor can "[w]e . . . inquire whether any rational trier of fact would conclude that petitioner ... is guilty of the offenses with which he is charged." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009). Rather, a habeas court must confine its review to determining whether the state court "was unreasonable in its conclusion that a rational trier of fact could find [petitioner] guilty beyond a reasonable doubt based on the evidence introduced at trial." *Id*. (emphasis in original) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 129 S.Ct. 1411, 1420, 173 L.Ed.2d 251 (2009)).

The state appellate court found no merit to Bigsby's sufficiency and manifest weight claims explaining as follows in a lengthy and thorough discussion:

> [*P13] Appellant's first assignment of error states:
>
> THE TRIAL COURT ERRED IN FINDING APPELLANT BIGSBY GUILTY OF FELONIOUS ASSAULT AS THAT FINDING IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> [*P14] We must examine the evidence introduced at trial to determine if the jury lost its way in finding appellant guilty.
>
> [*P15] Stewart was the first witness. She stated that she and appellant had been in a relationship that ended in November 2006. (Tr. 297). By April 27, 2007, she was in a new relationship with Vincent Franklin. (Tr. 297-298). Stewart testified that on the night in question, she was asleep in her downstairs bedroom with Franklin. (Tr. 298). Her older daughter, Breyona, was asleep in her upstairs bedroom and her younger daughter, Brianne, was asleep in her crib in Stewart's room. (Tr. 298).

-10-

 [*P16]  Stewart testified that she was awoken by a knocking on her door and then on her window. (Tr. 298-299). She realized that it was appellant and went to the door. (Tr. 299). Stewart opened the door slightly and asked appellant what he wanted. (Tr. 300). She did not invite him in because Franklin was in her bedroom. (Tr. 300). When she told this to appellant, he pushed the door open and punched her in the face. (Tr. 300).

 [*P17]  Appellant entered Stewart's house. (Tr. 301). He punched appellant again in the eye, tearing her eyelid. (Tr. 302). Appellant then went into Stewart's bedroom and confronted Franklin. (Tr. 304). Stewart went into the bedroom and appellant punched her in the face again. (Tr. 304). By this time, both of her eyelids had been torn and she had blood in both of her eyes. (Tr. 304). As a result, Stewart could not see. (Tr. 305). She attempted to make her way to the bathroom and tried to close the door but appellant pushed it open and punched her repeatedly. (Tr. 305-306). Stewart got out of the bathroom and went to her bedroom where she heard her daughter crying in her crib. (Tr. 308). She felt appellant hit her several more times and then she felt pain in her knee. (Tr. 309). She stated it was from a baseball bat. (Tr. 309-310). Stewart stated that she keeps a baseball bat in her hall closet. (Tr. 307). She then felt more hits in the back of her legs with a bat. (Tr. 310). Stewart stated that when she was on the ground appellant continued to hit her and stomp on her. (Tr. 311). Stewart eventually passed out. (Tr. 313). She was awoken by the police ringing her doorbell. (Tr. 313).

 [*P18]  As a result of the beating by appellant, Stewart testified she required surgery to her eyelids to stitch them back together. (Tr. 315). She was left with several scars on her face, legs, and shoulders. (Tr. 316). She showed some of her scars to the jury. (Tr. 413). She required two surgeries on her knee and underwent physical therapy. (Tr. 317). She also required a knee immobilizer. (Tr. 318). Stewart stated that since the attack, she has sensitivity to light, she developed cataracts, and she gets severe headaches. (Tr. 319-320). Stewart described the pain in her head after the attack as "excruciating" and stated that on a scale of one to ten, her headaches were a ten. (Tr. 318-320). She stated that the pain was the most severe pain she had felt in her life. (Tr. 318).

[*P19]  On cross-examination, Stewart admitted she never saw appellant hit her with the bat because her eyes were filled with blood and she could not see. (Tr. 361-362). She stated that at that time she did not know what appellant was hitting her with; she only knew that he was hitting her. (Tr. 362). She stated she learned it was a bat that appellant hit her with when she heard Breyona tell this to the police. (Tr. 362-363).

[*P20]  Breyona was the next witness. She stated that on the night in question she was asleep in her upstairs bedroom when she heard the doorbell. (Tr. 417-418).

She then heard Stewart tell appellant that he had to leave. (Tr. 418). Next, Breyona heard appellant "barging his way in." (Tr. 418). She stated she ran downstairs and caught a glimpse of what was going on. (Tr. 418). Specifically, she saw appellant hit Stewart with a bat. (Tr. 419). Breyona stated she did not stay to watch. (Tr. 419). Instead, she sneaked out of the house and went next door where she called the police. (Tr. 419-420). She waited at the next-door neighbor's house until the police arrived. (Tr. 420-421). From the neighbor's house, Breyona testified that she saw appellant chasing Franklin down the street with a bat. (Tr. 422).

[*P21] The next witness was Youngstown Police Officer Robert Martini. Officer Martini, along with his partner, was the first officer to arrive at Stewart's house. As he was exiting his cruiser, Breyona ran up to him. (Tr. 438-439). He stated Breyona was frantic and told him her mother was injured in a fight with appellant. (Tr. 440). Officer Martini knocked on Stewart's door and she answered it. (Tr. 441). Due to the amount of blood and Stewart's swollen eyes, Officer Martini initially thought there had been a shooting. (Tr. 441). Stewart told the officer that appellant was the one who had caused her injuries. (Tr. 442). Officer Martini stated that Stewart's eyes were swollen shut, her knees were hurt, and she was shaking. (Tr. 442).

[*P22] In describing the house, Officer Martini testified there was blood splatter on the wall by the bathroom and in the bedroom, blood on the bed sheets, and blood near a baseball bat located by the bed. (Tr. 443-444). Officer Martini stated that Stewart told him that she was hit with a baseball bat. (Tr. 447). Officer Martini also testified that a car was left in Stewart's driveway that was registered to a Charles Bigsby. (Tr. 450).

[*P23] On cross-examination, Officer Martini stated that Breyona told him that she was upstairs, she heard the fight, and she heard Stewart ask appellant not to hit her. (Tr. 461). She did not tell him that she witnessed any of the fight. (Tr. 461).

[*P24] Youngstown Detective-Sergeant Steve Schiffhauer testified that appellant was ultimately apprehended in California in July 2010. (Tr. 470).

[*P25] Appellant testified in his own defense. Appellant stated that he and Stewart had been seeing each other in the months preceding the night in question. (Tr. 489-490). On the night in question, appellant testified he had been out with some friends and then went to Stewart's house. (Tr. 491). He stated he knocked on the door and rang the doorbell and Breyona answered the door. (Tr. 492). Appellant said hello to Breyona and went into the house. (Tr. 494). He went into Stewart's bedroom and saw a man holding his daughter. (Tr. 495). Appellant told

-12-

the man to put his daughter down and get out. (Tr. 496). Appellant stated the man threw his daughter on the bed and walked toward him. (Tr. 497). The two men began to argue and Stewart then hit appellant on the back. (Tr. 497). As a result, appellant punched Stewart two or three times in the face. (Tr. 497). Appellant stated that he saw that Stewart's nose was bleeding so he apologized. (Tr. 498). He then picked up his daughter, put her in her crib, and left. (Tr. 499). Appellant denied ever seeing a bat or using a bat to hit Stewart. (Tr. 502-503).

[*P26] Appellant testified he was distraught because he had hit Stewart and he knew trouble was coming so he left town. (Tr. 500). He went to Atlanta and then to California. (Tr. 500-501). He did not return to Youngstown until he was arrested in California and transported back by police. (Tr. 501).

[*P27] On cross-examination, appellant admitted to a prior domestic violence conviction where Stewart was the victim. (Tr. 504). He also admitted that he left town because he knew he was going to be in trouble. (Tr. 516-517).

[*P28] Dr. Brian Gruber, the director of trauma and critical care at St. Elizabeth Hospital, was the last witness. Dr. Gruber admitted Stewart to the hospital. (Tr. 522). He testified Stewart had a fractured patella that required surgery. (Tr. 525-526). He stated she also had lacerations to her eyelids that required surgery to repair. (Tr. 527, 531-532). She also had multiple abrasions on her body. (Tr. 531). Dr. Gruber stated the medical history taken at the hospital indicated that Stewart's baby's father broke into her house and beat her with a baseball bat. (Tr. 528).

[*P29] The jury convicted appellant of two counts of felonious assault. The first count was in violation of R.C. 2903.11(A)(1), which provides that no person shall knowingly "cause serious physical harm to another." The second count was in violation of R.C. 2903.11(A)(2), which provides that no person shall knowingly "cause or attempt to cause physical harm to another * * * by means of a deadly weapon or dangerous ordnance."

[*P30] "Serious physical harm" includes physical harm that carries a substantial risk of death; or that involves some permanent incapacity or temporary, substantial incapacity; or that involves permanent disfigurement or temporary, serious disfigurement; or that involves acute pain of such duration as to result in substantial suffering. R.C. 2901.01(A)(5)(b)(c)(d)(e). "Physical harm" includes any injury regardless of its gravity or duration. R.C. 2901.01 (A)(3).

[*P31] As to his felonious assault conviction, appellant asserts the record is devoid of evidence that he inflicted any kind of permanent incapacity on Stewart or any temporary, substantial incapacity or any permanent disfigurement. Appellant also asserts the state failed to prove that he caused physical harm by

means of a deadly weapon.  He notes that the baseball bat he allegedly used as a deadly weapon was not introduced into evidence.  He further notes that no fingerprint or DNA testing was performed on the bat and it did not appear that there was any blood on the bat.  And he points out Stewart testified that she was unsure whether she was hit with the bat.  Finally, appellant argues that Breyona's testimony was not believable because she did not see much and ran out of the house to call the police.

[*P32]  As to the first felonious assault count, the evidence is clear that appellant knowingly caused serious physical harm to Stewart. Stewart testified that appellant's beating left her with several scars that were still visible almost five years after the attack, which she showed the jury.  Thus, she suffered permanent disfigurement.  Additionally, she described the pain in her head after the attack as "excruciating" and noted that she had never felt pain that severe in her life. Furthermore, the jury could have inferred that she suffered temporary, substantial incapacity due to her two knee surgeries, the knee immobilizer, and the physical therapy. This evidence was all uncontroverted.

[*P33]  As to the second felonious assault count, numerous courts have held that a baseball bat, when used as a weapon, can be a "deadly weapon" for felonious assault purposes.  *State v. Clouse*, 10th Dist. No. 11AP-857, 2012-Ohio-3471, ¶35; *State v. Andrews*, 8th Dist. No. 93104, 2010-Ohio-3864, ¶14; *State v. Acevedo*, 11th Dist. No. 2002-A-0109, 2005-Ohio-3267, ¶25; *State v. Roberts*, 6th Dist. No. S-04-003, 2004-Ohio-6468, ¶¶12-13.  There was some conflicting evidence as to whether appellant actually used the bat to hit Stewart.  Appellant testified that he did not use a bat, but only punched Stewart in the face.  Breyona, however, testified that she saw appellant strike Stewart with a bat. But she also testified that she saw appellant chase Franklin down the street with the bat, which was likely incorrect since the police found the bat in Stewart's house. And Stewart, although she could not see due to the blood in her eyes, believed that appellant hit her in the knees with the bat. Moreover, the police found the bat on the floor in Stewart's bedroom with blood near it. And in appellant's medical history reported at the hospital it stated that she was struck with a bat by appellant.

[*P34]  While an appellate court is permitted to independently weigh the credibility of the witnesses when determining whether a conviction is against the manifest weight of the evidence, we must give great deference to the fact finder's determination of witnesses' credibility. *State v. Wright*, 10th Dist. No. 03AP-470, 2004-Ohio-677, ¶11. The policy underlying this presumption is that the trier of fact is in the best position to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony. *Id*.

-14-

[*P35]  In this case, the jury found appellant's testimony to be less credible than Breyona's testimony.  Even though there was an inconsistency between Breyona's testimony and the location of the bat, the jury must have found her testimony more credible.  This could be due to the fact that appellant believed she was struck in the knees with a bat, the medical history indicated that she was struck with a bat, and the bat was located in Stewart's bedroom near a blood splatter.  Additionally, the fact that appellant suffered a broken patella lends further support to Breyona's testimony.

[*P36]  Given the evidence, we conclude that the jury did not lose its way in finding appellant guilty of felonious assault. Accordingly, appellant's first assignment of error is without merit.

[*P37]  Appellant's second assignment of error states:

> THE TRIAL COURT ERRED IN FINDING APPELLANT BIGSBY GUILTY OF AGGRAVATED ASSAULT [sic] AS THAT FINDING IS NOT SUPPORTED BY THE MANIFEST WEIGHT OF THE EVIDENCE.

[*P38]  The jury also convicted appellant of two counts of aggravated burglary.  The first count was in violation of R.C. 2911.11(A)(1) and the second count was in violation of R.C. 2911.11(A)(2). These sections provide:

> (A) No person, by force, stealth, or deception, shall trespass in an occupied structure * * * when another person other than an accomplice of the offender is present, with purpose to commit in the structure * * * any criminal offense, if any of the following apply:
>
>     (1) The offender inflicts, or attempts or threatens to inflict physical harm on another;
>
>     (2) The offender has a deadly weapon or dangerous ordnance on or about the offender's person or under the offender's control.

R.C. 2911.11(A)(1)(2).

[*P39]  As to his aggravated burglary conviction, appellant again asserts the state failed to prove he used a deadly weapon.  Additionally, appellant argues the state failed to demonstrate that he had a purpose to commit another offense when he entered Stewart's house.  He asserts that the "other offense" element of aggravated burglary could be either felonious assault or domestic violence.  He relies on his argument in his first assignment of error that his felonious assault conviction was against the weight of the evidence and, therefore, he argues

felonious assault cannot be the "other offense." He argues that domestic violence cannot be the "other offense" because his testimony indicated that he acted in self-defense and the only pictures of blood in the house were in the bedroom, which appellant claims supports his self-defense explanation.

[*P40]  Because appellant's felonious assault conviction is not against the manifest weight of the evidence, his argument that felonious assault cannot be the "other offense" required for an aggravated burglary conviction necessarily fails. Moreover, it was not necessary for the state to prove that appellant had a purpose to commit another offense when he entered Stewart's house.  The Ohio Supreme Court has held that, "[f]or purposes of defining the offense of aggravated burglary pursuant to R.C. 2911.11, a defendant may form the purpose to commit a criminal offense at any point during the course of a trespass." *State v. Fontes*, 87 Ohio St.3d 527, 2000 Ohio 472, 721 N.E.2d 1037 (2000), syllabus.  And as addressed above, a baseball bat can be a deadly weapon and the evidence supported the jury's finding that appellant used the bat to hit Stewart.

[*P41]  Moreover, while appellant testified that Breyona let him into the house, this testimony was contradicted by both Breyona and Stewart. Breyona testified that she was upstairs when she heard appellant "barging his way in." And Stewart testified that she opened the door and told appellant he was not welcome to come in because she had company and this resulted in appellant pushing the door open and punching her in the face.  Once again, which testimony to believe was a determination for the jury.  We cannot conclude that the jurors lost their way in finding Breyona's and Stewart's testimony more credible than appellant's testimony.

[*P42]  Accordingly, appellant's second assignment of error is without merit.

[*P43]  Appellant's third assignment of error states:

> THE TRIAL COURT ERRED IN FINDING THAT THE EVIDENCE DEMONSTRATED BY THE STATE WAS SUFFICIENT TO SUPPORT CONVICTIONS FOR FELONIOUS ASSAULT AND AGGRAVATED BURGLARY.

[*P44]  In this assignment of error, appellant asserts there was not sufficient evidence to support his convictions. As to his felonious assault conviction, appellant once again asserts that the state failed to present evidence of any incapacity he caused to Stewart. As to his aggravated burglary conviction, he argues the state failed to prove that he used a deadly weapon and failed to prove that he went to Stewart's house with the purpose to commit another criminal offense.

[*P45] Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the verdict. *State v. Smith*, 80 Ohio St.3d 89, 113, 1997 Ohio 355, 684 N.E.2d 668 (1997). In essence, sufficiency is a test of adequacy. *Thompkins*, 78 Ohio St.3d at 386. Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id*. In reviewing the record for sufficiency, the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Smith*, 80 Ohio St.3d at 113.

[*P46] In considering the evidence set out above, the state presented sufficient evidence going to each element of felonious assault and aggravated burglary.

[*P47] As discussed in appellant's first assignment of error, Stewart's testimony, along with corroboration by Dr. Gruber, was sufficient to establish the first count of felonious assault that appellant knowingly caused her "serious physical harm" when he repeatedly punched her in the face and head. Moreover, for the second count of felonious assault the state was only required to prove "physical harm," as opposed to the "serious physical harm" that was required for the first count, which it clearly did by Stewart's testimony. Additionally, for the second count the state had to present evidence that appellant used a deadly weapon in causing the physical harm. Breyona's testimony that she saw appellant hit Stewart with a bat was sufficient evidence on this point.

[*P48] And as discussed in appellant's second assignment of error, there was no requirement that appellant form the intent to commit another offense inside Stewart's house before he entered the house in order to find him guilty of aggravated burglary. It was sufficient that he formed the intent to commit felonious assault while he was trespassing in Stewart's house.

[*P49] Based on the above, the state presented sufficient evidence to support the jury's verdict in this case. Accordingly, appellant's third assignment of error is without merit.

*Bigsby*, 2013-Ohio-5641 at ¶¶13-49.

The state court's well-reasoned decision was not an unreasonable determination of the facts in light of the evidence presented. This Court has conducted its own independent review of the transcript and finds the state court accurately summarized the evidence presented at trial.

(ECF No. 5.)

The basis for Bigsby's challenge to the sufficiency of the evidence is largely incomprehensible based on his petition and traverse. (ECF Nos. 1 & 6.)  To the extent Bigsby is challenging the state appellate court's determination as to what evidence is necessary to satisfy the elements of felonious assault and aggravated burglary under Ohio law, this Court is bound by the state court's interpretation of state law. *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state."); *see also Riley v. Woods*, 2010 U.S. Dist. LEXIS 81453, 11-12 (E.D. Mich., Aug. 11, 2010) ("A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes.") (*citing Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002) ("What is essential to establish an element, like the question whether a given element is necessary, is a question of state law."); *Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998)).  As further explained in *Powell v. Berghuis*, 560 Fed. App'x 442, 449 (6th Cir. 2013), a petitioner, who argued that a Michigan court's definition of a "dwelling" was inaccurate under Michigan law, was inviting the federal court to "wade into the morass of state law."  The *Powell* court declined to do so, finding that such a claim was not cognizable on federal habeas review, noting that it was a "state law claim disguised as a *Jackson* [sufficiency] claim." *Id*.

Bigsby's arguments challenge the credibility of the testimony presented at trial.  Based on his state court filings, Bigsby appears to argue that he never used a baseball bat during the offense, that he was let into the victim's house by her daughter rather than entering forceably, and that his striking of the victim was preceded by her hitting him in the back of the head.  The state correctly recited the standard governing sufficiency claims, noting that the evidence must be

-18-

construed in a light most favorable to the prosecution. This Court agrees that the testimony of the victim and other witnesses, if credited by the jury, was sufficient to substantiate the elements of Bigsby's convictions. Though Bigsby undoubtedly believes his testimony should have been afforded greater weight than the testimony of the victim and her daughter or that his rendition of events was more plausible or consistent, such arguments do not detract from the sufficiency of the evidence supporting his convictions, as credibility determinations are reserved for the finder of fact.

In light of the above, there is nothing unreasonable about the state court's determination that sufficient evidence existed to support Bigsby's convictions. Therefore, his sole ground for relief is without merit.

### IV. Conclusion

For the foregoing reasons, it is recommended that Bigsby's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE

Date: October 1, 2015

### OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).